# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**GERALDINE CAMPBELL,**

   **Plaintiff,**

  **v.**

            **Civil No. 8:22-cv-00949-JRR**

**PEARL RIVER TECHNOLOGIES,**
**LLC,** *et al.*

   **Defendants.**

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on Defendant Omitron, Inc.'s Motion to Dismiss. (ECF No. 19; the "Motion.") The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2021). For the reasons set forth herein, the Motion will be granted.

## BACKGROUND[1]

From February 2008 through January 2021, Plaintiff Geraldine Campbell worked at NASA under three different IT contractors. (ECF No. 1 ¶¶ 48, 61, 109.) Plaintiff started her employment with AI Solutions, Inc.; she then moved to Omitron and then finally to Pearl River Technologies ("PRT"). *Id.*

Plaintiff alleges that, on February 11, 2008, she began working at AI Solutions; throughout her employment, she had no issues with her job or colleagues. *Id.* ¶¶ 48, 57. In 2014, Omitron, the new NASA contractor, took over for AI Solutions. *Id.* ¶¶ 58, 61. On November 1, 2014, Plaintiff began working at Omitron as an Information Systems Security Officer. *Id.* ¶ 61. Plaintiff alleges that her Omitron white male co-workers refused to show her where certain security

---

[1] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Complaint.

documents were in a timely manner, which disabled her from doing her job.  (ECF No. 1 ¶¶ 62-65.)  Plaintiff further alleges that another Omitron employee intentionally, deceptively, and unfairly withheld a spreadsheet and working document template from her, which resulted in her spending eight hours at home working on documents that already existed but which she had not been provided.  *Id.* ¶¶ 68-76.  Plaintiff alleges that she reported the incident to the "team lead," but he did nothing in response.  *Id.* ¶ 80.

Plaintiff alleges that in 2016 the team lead came into her office, stood over her shoulder, and told her that she must take the Certified Information Systems Security Professional ("CISSP") exam.  (ECF No. 1 ¶ 97.)  Plaintiff responded that she felt unprepared and wanted to revisit certain chapters because she did not want to fail the test.  *Id.* ¶ 98.  Plaintiff reported this incident to human resources because she felt intimidated, harassed, and pressured; human resources did nothing.  *Id.* ¶ 99.  In October 2016, Plaintiff scheduled her first CISSP test because she felt intimidated and pressured to do so.  *Id.* ¶ 100.  While taking the test, her computer was slow to respond, she was unprepared and unable to finish, and ultimately, failed the test.  *Id.* ¶ 102.  Plaintiff alleges that, after she failed the test, she was told by her team lead that she had to retake the test and pass it no later than December 31, 2016.  (ECF No. 1 ¶ 104.)  Plaintiff attempted to reschedule the test for the end of December, but was unable to reschedule the test until after January 1, 2017.  *Id.* ¶ 106.  Sometime between October 2016 and January 2017, Plaintiff was in a car accident.  *Id.* ¶ 105.  As a result, she was unable to prepare for the test and failed it.  *Id.* ¶¶ 105-106.  Plaintiff was removed from the security team on December 31, 2016.  *Id.* ¶ 108.

On October 31, 2019, Omitron's contract ended and PRT took over.  (ECF No. 1 ¶ 162.)  Plaintiff alleges that Omitron's contract did not actually end on October 31, 2019, because Omitron and PRT took over the contract as a joint venture by the name of OPR, LLC.  *Id.* ¶ 167.   On

November 1, 2019, Plaintiff began working for PRT as a Senior Systems Engineer; *Id.* ¶ 109. Plaintiff alleges various discriminatory incidents that occurred while working at PRT. *Id.* ¶¶ 109-192. Specifically, Plaintiff alleges that her PRT white co-workers treated her in a hostile manner, including falsely accusing her of causing systems errors. (ECF No. 1 ¶ 111.) She complained to human resources about what she viewed as a hostile work environment and less favorable treatment; however, human resources did nothing about it. *Id.* ¶ 115. PRT terminated Plaintiff's employment on January 11, 2021, on the basis that Plaintiff was not qualified for the job. *Id.* ¶¶ 114, 116. Plaintiff asserts that PRT's termination basis was untrue and that a young, white male with no job experience was selected for a newly created position. *Id.* ¶¶ 117-118. Plaintiff alleges that the job changes made by PRT were motivated by discriminatory animus against her and she was retaliated against because she complained about being subject to hostile and discriminatory treatment. *Id.* ¶ 192.

On May 27, 2021, Plaintiff filed a Charge of Discrimination with the EEOC against NASA, alleging discriminatory employment conduct occurring from January 2020 through January 2021. (ECF No. 1-6.) On January 18, 2022, the EEOC dismissed the charge. *Id.* Plaintiff appealed and the EEOC affirmed its dismissal of the charge. *Id.* Plaintiff alleges that she received a Right to Sue letter on January 18, 2022. (ECF No. 1 ¶ 1.) On August 11, 2021, Plaintiff filed an additional Charge of Discrimination with the EEOC against PRT and NASA, alleging discriminatory conduct occurring from September 1, 2020, through January 11, 2021. (ECF No. 1-5.)

On April 18, 2022, Plaintiff filed the instant Complaint against Defendants PRT, OPR, and Omitron, alleging she was discriminated against on the basis of her race, sex, and age, and subject to retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, Section 1981 (42 U.S.C. § 1981), Age Discrimination in Employment Act of 1976 ("ADEA"), and

the Maryland Fair Employment Practices Act ("FEPA"), MD. CODE ANN. STATE GOV'T §§ 20-601, *et seq.* (ECF No. 1 at 1-2.)

The Complaint sets forth nine counts against all Defendants: (I) Disparate Terms and Conditions of Employment Based on Race and Sex – 42 U.S.C. §§ 2000e, *et seq.*; (II) Disparate Impact Terms and Conditions of Employment Based on Race and Sex – 42 U.S.C. §§ 2000e, *et seq.*; (III) Hostile Work Environment Based on Race and Sex – 42 U.S.C. §§ 2000e, *et seq.*; (IV) Retaliation – 42 U.S.C. §§ 2000e, *et seq.*; (V) Disparate Terms and Conditions of Employment Based on Race – 42 U.S.C. §§ 1981-1988; (VI) Hostile Work Environment Claim Based on Race – 42 U.S.C. §§ 1981-1988; (VII) Retaliation – 42 U.S.C. §§ 1981-1988; (VIII) Age Discrimination in Employment Act of 1967 ("ADEA"); and (IX) Maryland Fair Employment Practices Act ("FEPA"), MD. CODE ANN. STATE GOV'T §§ 20-601, *et seq.* (ECF No. 1 at 36-50.) Plaintiff seeks: (i) judgment in her favor on all counts; (ii) compensatory damages; (iii) punitive damages; (iv) costs and reasonable attorney's fees; and (v) an order enjoining "Defendant" from future discrimination and retaliation. (ECF No. 1 at 52.)

Omitron moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 19-1 at 1.) Omitron argues that Plaintiff's Title VII, ADEA, and FEPA claims—Counts I through IV, VIII, and IX—must be dismissed because Plaintiff has not exhausted her administrative remedies, and the time to do has expired.[2] *Id.* Omitron further argues that Plaintiff's Section 1981 claims—Counts V through VII—are barred by the statute of limitations. *Id.* at 2. Lastly, Omitron argues that Plaintiff fails to state a claim. *Id.*

---

[2] The Motion states that Count VII (the retaliation claim) should be dismissed for failure to exhaust administrative remedies; however, this appears to be a typo throughout the Motion. (ECF No. 19-1 at 6.) The Motion clarifies that the Title VII, ADEA, and FEPA claims are subject to administrative exhaustion. (ECF No. 19-1 at 6.) The Title VII, ADEA, and FEPA claims are Counts I through IV, VIII, and IX, which are subject to administrative exhaustion. As the Motion properly asserts, Count VII is a section 1981 retaliation claim not subject to exhaustion requirements. *See* Section II, *infra.*

**LEGAL STANDARD**

**Federal Rule of Civil Procedure 12(b)(6)**

"'The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling [her] to relief." *Edwards*, 178 F.3d at 244 (*citing Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "A complaint that provides no more than 'labels and conclusions,' or 'formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).  "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. PX-21-1637, 2021 U.S. Dist. LEXIS 221041, at *4 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

<u>ANALYSIS</u>

**I.**     <u>Exhaustion of Administrative Remedies</u>

Omitron argues that Plaintiff failed to exhaust her administrative remedies as to her claims brought pursuant to Title VII, the ADEA, and the FEPA—Counts I through IV, VIII, and IX.  (ECF No. 19-1 at 6.)

Title VII, the ADEA, and the FEPA require a plaintiff to exhaust administrative remedies prior to bringing suit in court.  *See Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (citing 42 U.S.C. § 2000e-5(b), (f); 29 U.S.C. § 633a(d)) (explaining that "[i]t is well settled that before filing suit under Title VII or the ADEA, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC"); *Johnson v. United Parcel Serv., Inc.*, No. CIV.A. RDB-14-4003, 2015 WL 4040419, at *6 (D. Md. June 30, 2015) (concluding that FEPA requires administrative exhaustion prior to filing suit).  FEPA incorporates the Title VII exhaustion requirements.  *See Johnson*, 2015 WL 4040419, at *6 n.12 (explaining that "Title VII and FEPA are analyzed as one because '[t]he Maryland Court of Appeals has deemed FEPA to be the state law analogue of Title VII, and has noted that Maryland courts traditionally seek guidance from federal cases in interpreting Maryland's [FEPA]'") (quoting *Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC*, No. JKB-10-276, 2011 WL 4549177, at *4 n.3 (D. Md. Sept. 28, 2011)); *Alexander v. Marriott Intern., Inc.*, No. RWT-09-cv-2402, 2011 WL 1231029, at *6 (explaining that FEPA is "the state analogue of Title VII").  Further, "the ADEA's exhaustion requirements are not materially different from Title VII's requirements." *Marshall v. Anne Arundel County, Md.*, ELH-18-74, 2019 WL 568676, at *10 (D. Md. Feb. 12, 2019).

An EEOC charge serves two important purposes: (1) "it notifies the charged party of the asserted violation" and (2) "it brings the charged party before the EEOC and permits effectuation

of the [Civil Rights] Act's primary goal, the securing of voluntary compliance with the law."

*Dickey v. Greene*, 710 F.2d 1003, 1005 (4th Cir. 1983), *rev'd on other grounds*, 729 F.2d 957 (4th

Cir. 1984).  In *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401 (4th Cir. 2013), the court

clearly explained the EEOC process:

> An employee complaining of illegal discrimination must first
> contact the EEOC and present it with information supporting the
> allegations. After receiving an employee's intake questionnaire and
> any other information the employee has provided, the EEOC
> typically assists the employee with filing a charge. This assistance
> often includes drafting a charge—as it did here—and then asking
> the employee to sign it.
>
> The EEOC sends a notice and copy of the charge to the employer.
> This notice gives the employer the chance to voluntarily conduct its
> own investigation and attempt to resolve any discriminatory actions
> internally. Concurrently, the EEOC investigates the charge.
>
> The filing of a charge also "initiates agency-monitored settlement,
> the primary way that claims of discrimination are resolved." This
> procedure "reflects a congressional intent to use administrative
> conciliation as the primary means of handling claims, thereby
> encouraging quicker, less formal, and less expensive resolution of
> disputes." Prior to making any determination as to the merit of a
> charge, the EEOC may encourage and facilitate settlement between
> the parties.
>
> If the EEOC finds "reasonable cause to believe that the charge is
> true, the Commission shall endeavor to eliminate any such alleged
> unlawful employment practice by informal methods of conference,
> conciliation, and persuasion." If the EEOC cannot reach a voluntary
> settlement with the employer, the agency may file a lawsuit or issue
> a Notice–of–Right–to–Sue to the employee. If the EEOC does not
> make a reasonable cause determination or the employee requests a
> right to sue, the agency may issue one, thus allowing the employee
> to file suit.

Id. at 407 (internal citations omitted).  The exhaustion requirement, therefore, is not "simply a

formality to be rushed through so that an individual can quickly file his subsequent lawsuit."

*Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). It "serves a vital function in the process of remedying an unlawful employment practice." *Balas*, 711 F.3d at 407.

Generally, "a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko*, 429 F.3d at 506. In *Walton v. Harker*, 33 F.4th 165 (4th Cir. 2022), the Fourth Circuit succinctly explained:

> A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit. The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. [F]actual allegations made in formal litigation must correspond to those set forth in the administrative charge. Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII [or ADEA] lawsuit.

*Id.* at 172. With this mind, the court also recognizes that "EEOC charges often are not completed by lawyers and as such 'must be construed with utmost liberality.'" *Balas*, 711 F.3d at 408 (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)). The court, however, is not "at liberty to read into administrative charges allegations they do not contain." *Id.*

The Complaint attaches two exhibits. The first exhibit is a charge of discrimination filed with the EEOC against NASA and PRT dated August 11, 2021. (ECF No. 1-5; "EEOC Complaint.") The EEOC Complaint specifies that the earliest and latest dates of discrimination are September 1, 2020, and January 11, 2021, respectively. *Id.* The second exhibit is an EEOC decision dated January 18, 2022, affirming dismissal of Plaintiff's charge. (ECF No. 1-6; "EEOC decision.") Upon review of the EEOC decision, it references another charge of discrimination

Plaintiff filed against NASA on May 27, 2021.  *Id.*  Plaintiff alleges that she received a Right to Sue letter on January 18, 2022.[3]  (ECF No. 1 ¶ 1.)

While it is unclear whether Plaintiff received a right to sue letter in relation to the EEOC Complaint against PRT and NASA dated August 11, 2020, neither the EEOC Complaint nor the EEOC decision names Omitron, nor do any of the allegations relate to conduct occurring while Plaintiff worked at Omitron.  Indeed, the administrative charges reference different time frames, actors, and discriminatory conduct.  *See Chacko*, 429 F.3d at 506.

In response to the Motion, Plaintiff sets forth various arguments and maintains that she exhausted her administrative remedies as to Omitron.  As an initial matter, "[i]t is well-established that parties cannot amend their complaints through briefing or oral advocacy."  *Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands*, 713 F.3d 175, 184 (4th Cir. 2013).  Accordingly, the court declines to consider any additional allegations set forth in Plaintiff's Response that were not contained in the Complaint.  Nonetheless, the court will address Plaintiff's additional arguments brought forth in her Response at ECF No. 36.

First, Plaintiff argues that because OPR, Omitron, and PRT "acted as one corporation, Plaintiff exhausted her administrative remedies against all of them, when she exhausted her administrative remedies against one of them."  (ECF No. 36-1 at 3.)  Further, Plaintiff suggests that "[a]s members of a joint venture, Defendants are jointly and severally liable."  *Id.*  Finally, Plaintiff makes numerous references to "piercing the corporate veil."  *Id.* at 2.  As discussed below, Plaintiff's Complaint is devoid of any allegations to suggest that Omitron, OPR, and PRT are jointly and severally liable, joint employers, or that piercing the corporate veil is appropriate.

---

[3] The Complaint fails to clarify to which EEOC charge of discrimination the January 2022 Notice of Right to Sue letter pertains.

### A.   <u>Substantial Identity Test</u>

The court construes Plaintiff to argue that this action may be brought against Omitron even though Omitron is not formally named in the EEOC Complaint.

"Although the Fourth Circuit has not formally adopted the test, other Courts within the circuit have employed the substantial identity test to assess whether a civil action can fairly be brought against a defendant other than the one named in the EEOC charge." *Marshall v. Anne Arundel Cnty., Md.*, No. SAG-18-0074, 2020 WL 1939712, at *5 (D. Md. Apr. 22, 2020).  The substantial identity test analyzes four factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
>
> 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
>
> 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; [and]
>
> 4) whether the unnamed party had in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Vanguard Justice Soc'y Inc. v. Hughes*, 471 F. Supp. 670, 688 (D. Md. 1979) (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)).

Addressing these four factors, Plaintiff knew she worked for Omitron and that the alleged discriminatory acts against Omitron occurred while she was an Omitron employee.  There are no allegations in the Complaint that allow the court to reasonably understand or conclude that PRT and Omitron are "so similar" that it would not have been necessary to name Omitron in the EEOC Complaint.  Neither the EEOC Complaint nor the EEOC decision refers to Omitron, its employees,

or the dates of alleged discrimination while Omitron employed Plaintiff.  Omitron was a separate business employer from PRT and OPR.  Indeed, Plaintiff alleges that she worked at NASA under three different IT contractors: AI Solutions, Omitron, and PRT.  (ECF No. 1 at 10.)  Further, no allegations suggest that Omitron was notified that it should stake an interest in the EEOC proceedings.  Lastly, Plaintiff does not allege that Omitron made any representations with respect to its relationship with PRT.  Plaintiff fails to allege any facts necessary to satisfy the substantial identity exception to the EEOC naming requirement.

### B. <u>Joint Employer Doctrine</u>

The court construes Plaintiff to argue that Defendants are joint employers because OPR is a joint venture of Omitron and PTR.

"An entity need not be a plaintiff's sole employer in order to be liable under the statutes at issues."  *Marshall*, 2019 WL 568676, at *8 (considering the joint employer doctrine for the plaintiff's ADA, ADEA, and FEPA claims); *Rodgers v. Eagle All.*, 586 F. Supp. 3d 398, 428 (D. Md. 2022) (considering the joint employer doctrine for the plaintiff's Title VII claim).  The joint employer doctrine provides that an entity "may be a joint employer if it exercises sufficient control over the terms and conditions of the plaintiff's employment."  *Rodgers*, 586 F. Supp. 3d at 428. The Fourth Circuit has set out nine factors to determine whether an entity is a joint employer:

> (1) authority to hire and fire the individual;
> (2) day-to-day supervision of the individual, including employee discipline;
> (3) whether the putative employer furnishes the equipment used and the place of work;
> (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;
> (5) the length of time during which the individual has worked for the putative employer;
> (6) whether the putative employer provides the individual with formal or informal training;

(7) whether the individual's duties are akin to a regular employee's duties;

(8) whether the individual is assigned solely to the putative employer; and

(9) whether the individual and putative employer intended to enter into an employment relationship.

*Butler v. Drive Auto. Indus. of America, Inc.*, 793 F.3d 404, 414 (4th Cir. 2015); *see Marshall*, 2019 WL 568676, at *9 (finding that the plaintiff adequately alleged that a county was the plaintiff's joint employer when the plaintiff addressed several factors of the joint employer doctrine including that "the County played some role in her hiring; it paid her; and it furnished her place of employment"). While none of the factors is dispositive, "the common-law element of control remains the 'principal guidepost' in the analysis." *Butler*, 793 F.3d at 414.

The Complaint contains no allegations that suggest or allow the court to conclude that Omitron and PRT jointly employed Plaintiff. Specifically, there are no allegations that Omitron played a role in hiring or terminating Plaintiff at PRT, nor that Omitron was involved with Plaintiff's employment at PRT. There are no allegations that Omitron provided the place for Plaintiff to work while she was employed with PRT. Further, nothing suggests that Omitron had any responsibility regarding Plaintiff's employment records, taxes, insurance, or training while she worked at PRT. Accordingly, Plaintiff fails to allege that Omitron and PRT are joint employers.

### C.   Piercing the Corporate Veil

Plaintiff argues that the corporate veil should be pierced among Omitron, PRT, and OPR.[4] (ECF No. 36-1 at 5.) "Although the corporate form ordinarily prohibits one entity from being

---

[4] Plaintiff cites state law on piercing the corporate veil; however, "[s]ince this matter involves veil piercing under Title VII, federal common law, and not state law, may define the contours of veil piercing." *Mayes v. Moore*, 419 F. Supp. 2d 775, 782 n.5 (M.D.N.C. 2006). "The Fourth Circuit applies federal standards to a veil-piercing claim under other federal statutes because 'veil [piercing] determines who is liable' under the statute and [the] court assumes this circuit would apply the same standards to a Title VII action that includes veil piercing." *Id.* (quoting *Thomas v. Peacock*, 39 F.3d 493, 502-503 (4th Cir. 1994), *rev'd on other grounds*, 516 U.S. 349, 1996)). That notwithstanding, the result is the same in this case whether the court applies Maryland law or federal law.

liable for the acts of a separate, though related, entity, courts will pierce the corporate veil in 'extraordinary circumstances,' such as when the corporate form is being used for wrongful purposes." *Flame S.A. v. Freight Bulk Pte. Ltd.*, 807 F.3d 572, 587 (4th Cir. 2015) (quoting *Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 708 F.3d 627, 543-44 (4th Cir. 2013); *accord Starfish Condominium Ass'n v. Yorkridge Service Corp., Inc.*, 295 Md. 693, 714 (1983) (explaining that the court will only disregard the corporate form "where it is necessary to prevent fraud or enforce paramount equity"); *see Keffer v. H.K. Porter Co., Inc.*, 872 F.2d 60, 64 (4th Cir. 1989) (explaining that "although decisions to pierce a corporate veil, exposing those behind the corporation to liability, must be taken reluctantly and cautiously, courts will not hesitate to take such action when justice so requires").  The court in *Mayes v. Moore* explained:

> Normally, a shareholder is not liable for the corporate liability. If the shareholder controlled and used the corporate form inequitably, then the controlling shareholder is, in equity, the party that should pay the liability. The individual is responsible for the Title VII violation not because he committed the violation but because he unfairly used the corporate form; thus, he should not receive the usually attendant "limited liability" afforded to shareholders.

419 F. Supp. 2d 775, 781 (M.D.N.C. 2006).

In determining whether the corporate veil should be pierced, the court considers whether certain conditions are present, including "gross undercapitalization of the subservient corporation; failure to observe corporate formalities; nonpayment of dividends; siphoning of the corporation's funds by the dominant corporation; non-functioning of officers and directors; absence of corporate records; and the fact that the corporation is merely a facade for the operation of the dominant stockholder or stockholders."  *Keffer*, 872 F.2d at 65; *accord Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 126 Md. App. 294, 307 (1999) (considering similar factors).

13

Plaintiff alleges:

> In fact, in September 2019, the NASA Flight Dynamics Support Services (FDSS) III Contract was awarded to OPR, LLC, of Beltsville, Maryland, a joint venture between Omitron, Inc., and Pearl River Technologies. The Contract value amount was $165 million.
>
> . . .
>
> The NASA FDSS phase II Contract serviced by Omitron Inc., from November 1, 2014, in actuality, did not end on October 31, 2019, or November 1, 2019, when Pearl River Technologies started, because both Omitron and PRT took over the phase III of the same contract together as partners, under their joint venture name of OPR, LLC, of Beltsville, Maryland.

(ECF No. 1 ¶¶ 159, 167.)

While Plaintiff alleges OPR is a joint venture between Omitron and PRT, the Complaint contains no allegations to support piercing the corporate veil. Plaintiff does not allege Omitron is liable because it abused the corporate form; rather, Plaintiff alleges it discriminated against her. In sum, there is no basis on which to conclude that piercing the corporate veil is appropriate.

### D.    Leave to Amend

Omitron argues that Plaintiff cannot cure her failure to exhaust administrative remedies because the deadline to do so has long expired. (ECF No. 19-1 at 9.) Plaintiff answers by suggesting that she could amend her Complaint to address this defect. (ECF No. 36-1 at 3.)

Under Federal Rule of Civil Procedure 15(a) "[a] party may amend its complaint once as a matter of course." FED. R. CIV. P. 15(a). Once the defendant files a responsive pleading, however, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* Rule 15(a) states that "[t]he court should freely give leave when justice so requires." *Id.* "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (quoting *Johnson v.*

14

*Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).  The court has denied leave to amend on the grounds that any amendment would be futile because a plaintiff has failed to timely file a discrimination claim with the EEOC.  *Dolgaleva v. Va. Beach City Pub. Schools*, 364 Fed. Appx. 820, 824 (4th Cir. 2010).

Pursuant to 42 U.S.C. § 2000e–5(e)(1), a plaintiff must file an administrative charge with the EEOC within 180 days of the alleged misconduct.  42 U.S.C. § 2000e–5(e)(1).  "This period is extended to 300 days in a deferral state, one in which 'state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency.'"  *Valderrama v. Honeywell Tech. Solutions, Inc.*, 473 F. Supp. 2d 658, 662 n.4 (4th Cir. 2007) (quoting *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004)).  Maryland is a deferral state; therefore, Plaintiff's claims of discrimination under Title VII, or the ADEA, were required to be filed no more than 300 days after the alleged unlawful employment practice.  The last alleged unlawful employment practice by Omitron took place on December 31, 2016.  (ECF No. 1 ¶ 108.)  Therefore, Plaintiff had to file a charge with the EEOC on or before October 27, 2017.  Plaintiff did not file by the deadline.

Accordingly, the Motion will be granted as to Counts I through IV, VIII, and IX.

## II.    Statute of Limitations

Omitron argues that the section 1981 claims—Counts V, VI, and VII—are barred by the statute of limitations.  (ECF No. 19-1 at 10.)  In response, Plaintiff maintains that OPR, PRT, and Omitron should be treated as one corporation.  (ECF No. 36-1 at 6.)

Normally, at this stage, the court does "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  "[I]n the relatively rare circumstances where facts sufficient to rule on

an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (*en banc*). "This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir.1993)

Plaintiff's section 1981 claims are governed by 28 U.S.C. § 1658's four year statute of limitations, which applies to "civil actions arising under an Act of Congress enacted after [December 1, 1990]." 28 U.S.C. § 1658; *see Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 370 (2004) (holding that "a cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990—and therefore is governed by § 1658's 4–year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post–1990 enactment").

The Complaint alleges that December 31, 2016, is the last date of wrongful conduct by Omitron. Therefore, Plaintiff was required to file suit by December 31, 2020. Plaintiff did not file this lawsuit until March 18, 2022. Plaintiff's section 1981 claims set forth in Counts V, VI, and VII are barred by the statute of limitations.

## III.   **Attorney's Fees**

Defendant requests the court to award its reasonable attorney's fees because Plaintiff's claim is frivolous. (ECF No. 19-1 at 16.) "Title VII of the Civil Rights Act of 1964 authorizes an award of attorney's fees in certain circumstances." *CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 421 (2016). "Before deciding whether an award of attorney's fees is appropriate in a given case, [] a court must determine whether the party seeking fees has prevailed in the litigation." *Id.* Based on the foregoing, there is no question that Omitron is the prevailing party. If Omitron wishes to file a fee petition, it shall do so within 30 days of entry of the order associated with this opinion.

16

## **CONCLUSION**

For the reasons set forth herein, Omitron's Motion to Dismiss (ECF No. 19) will be  granted and Omitron will be afforded 30 days within which to file a fee petition.

A separate order follows.

/S/

_____
Julie R. Rubin
United States District Judge

July 10, 2023