IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GERALDINE CAMPBELL,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>PEARL RIVER TECHNOLOGIES, LLC, *et al.*<br><br>Defendants/Counter-Plaintiff. | Civil No. 8:22-cv-00949-JRR |

## MEMORANDUM OPINION

This matter comes before the court on Defendants Pearl River Technologies, LLC ("PRT") and OPR, LLC's Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 21; "the Motion.") The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2021). For the reasons set forth herein, the Motion will be granted.

## BACKGROUND[1]

From February 2008 through January 2021, Plaintiff worked at NASA on the Flight Dynamics Support Services (FDSS) contract.[2] (ECF No. 1 ¶¶ 13, 159, 161, 162.) The NASA FDSS contracts were awarded in phases for a period of five years. *Id.* ¶¶ 161, 162. NASA awarded phase I of the FDSS contract to AI Solutions. *Id.* ¶ 161. In 2014, NASA awarded phase II of the FDSS contract to Omitron. *Id.* ¶ 162. In 2019, NASA awarded phase III of the FDSS contract to OPR. *Id.* ¶ 162, 167. OPR is a joint venture between Omitron and PRT. (ECF No. 21-3 ¶ 3.)

---

[1] Unless otherwise stated, the facts set forth in the Background section are undisputed.
[2] The NASA FDSS contract provides flight dynamics support and services at NASA's Goddard Space Flight Center in Greenbelt, Maryland. (ECF No. 37-13.)

PRT owns fifty-one percent of OPR, and Omitron owns the remaining forty-nine percent of OPR. *Id.* PRT and Omitron are subcontractors to OPR on the FDS III contract. *Id.*

Plaintiff worked on all three phases with the different IT contractors. (ECF No. 1 ¶¶ 48, 61, 109.) On November 1, 2019, Plaintiff began working with PRT as a Senior Systems Engineer. *Id.* ¶ 109. On January 11, 2021, PRT terminated Plaintiff's employment. *Id.* ¶ 168. That same day, PRT presented Plaintiff with a termination letter, a Confidential Separation Agreement, Waiver, and Release ("the Agreement") and a cover letter discussing the Agreement. (ECF Nos. 21-3; 21-4.) On January 15, 2021, Plaintiff signed the Agreement. (ECF No. 21-4.)

On August 11, 2021, Plaintiff filed a Charge of Discrimination with the EEOC against PRT and NASA, alleging race, sex, and age discrimination, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and the Age Discrimination in Employment Act of 1976 ("ADEA"). (ECF No. 1-5.) On April 18, 2022, Plaintiff brought this action against Defendants PRT, OPR, and Omitron alleging she was discriminated against on the basis of her race, sex, and age, and subject to retaliation in violation of Title VII, Section 1981 (42 U.S.C. § 1981), the ADEA, and the Maryland Fair Employment Practices Act ("FEPA"), MD. CODE ANN. STATE GOV'T §§ 20-601, *et seq.* (ECF No. 1 at 1-2.)

The Complaint sets forth nine counts against all Defendants: (I) Disparate Terms and Conditions of Employment Based on Race and Sex – 42 U.S.C. §§ 2000e, *et seq.*; (II) Disparate Impact Terms and Conditions of Employment Based on Race and Sex – 42 U.S.C. §§ 2000e, *et seq.*; (III) Hostile Work Environment Based on Race and Sex – 42 U.S.C. §§ 2000e, *et seq.*; (IV) Retaliation – 42 U.S.C. §§ 2000e, *et seq.*; (V) Disparate Terms and Conditions of Employment Based on Race – 42 U.S.C. §§ 1981-1988; (VI) Hostile Work Environment Claim Based on Race – 42 U.S.C. §§ 1981-1988; (VII) Retaliation – 42 U.S.C. §§ 1981-1988; (VIII) Age Discrimination

in Employment Act of 1967 ("ADEA"); and (IX) Maryland Fair Employment Practices Act ("FEPA"), MD. CODE ANN. STATE GOV'T §§ 20-601, *et seq.* (ECF No. 1 at 36-50.) Plaintiff seeks: (i) judgment in her favor on all counts; (ii) compensatory damages; (iii) punitive damages; (iv) costs and reasonable attorney's fees; and (v) an order enjoining "Defendant" from future discrimination and retaliation. (ECF No. 1 at 52.)

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 21-2.) Defendants first argue that the Complaint should be dismissed in its entirety because Plaintiff's claims are barred by the Agreement. *Id.* at 1. Defendants also argue that Plaintiff's claims against OPR should be dismissed because Plaintiff did not exhaust administrative remedies as to OPR, and Plaintiff did not adequately allege that OPR was her employer. *Id.* at 2. Additionally, Defendants argue that Plaintiff's Title VII claims—Counts I through IV—are premature because the EEOC has not issued a Right to Sue letter in this matter. *Id.* Finally, Defendants argue that Plaintiff fails to state a claim in Counts II, III, VI, VII, and IX. *Id.*

## LEGAL STANDARDS

**<u>Federal Rule of Civil Procedure 12(d)</u>**

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. "A motion with this caption implicates the court's discretion under Fed. R. Civ. P. 12(d)." *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022). Federal Rule of Civil Procedure 12(d) provides, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). "Pursuant to Rule 12(d), the Court has discretion to determine whether

to accept evidence outside the pleadings, and thus convert a Rule 12(b)(6) motion to a Rule 56 motion." *Coleman v. Calvert Cnty.*, No. GJH-15-920, 2016 U.S. Dist. LEXIS 130420, at \*8 (D. Md. Sept. 22, 2016) (citations omitted).

"There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). "First, all parties must 'be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material outside the pleadings is before the court.'" *Snyder,* 2022 WL 980395, at \*4 (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). Second, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Interest Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

In the present case, Plaintiff had adequate notice that the Motion may be treated as a motion for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998) (explaining that "[b]ased upon the caption alone, [the plaintiff] was on notice that this motion might be treated as one for summary judgment"). Plaintiff referred to the Motion in her Opposition as one for summary judgment, introduced additional allegations beyond those contained in her Complaint, and attached twelve exhibits for the court to consider. *See* ECF No. 37. As the court explained in *Snyder*, "[b]oth actions reflect [] subjective awareness that the motion could be construed as a motion for summary judgment." 2022 WL 980395, at \*4. With regard to the second requirement, Plaintiff filed a Rule 56(d) affidavit arguing that additional discovery is

necessary to determine the relationship between OPR, PRT, and Omitron.  However, "Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery." *Hamilton v. Mayor & City Council of Baltimore*, 807 F.Supp.2d 331, 342 (D. Md. 2011).  "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Financial Services LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20 (D. Md. Feb. 14, 2011)). "A non-moving party's Rule 56(d) request for additional discovery is properly denied 'where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'" *Sager v. Housing Com'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 543 (D. Md. 2012) (quoting *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir.1995)).

The Rule 56 affidavit attached to Plaintiff's Opposition asserts the need to take discovery on the issue of piercing the corporate veil. (ECF No. 37-14.)  Although Plaintiff claims a need for additional discovery, she has "failed to demonstrate that the evidence [she] seeks to recover will materially affect the outcome of the case." *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006).  In the Motion, Defendants' main argument is that Plaintiff's claims are barred by the Agreement.  While Plaintiff maintains that discovery is necessary as to the issues pertaining to piercing the corporate veil, there are no allegations to suggest or allow the court to conclude that piercing the corporate veil is appropriate.  Indeed, there are no "allegations to suggest that the corporate entities are inadequately capitalized, that there is a comingling of corporate assets . . . that there are non-functioning officers and directors, that the corporations are insolvent, or that corporate records are not properly kept." *Doe v. Chesapeake Medical Solutions, LLC*, No. SAG-19-2670, 2019 WL 6497962, at *6 (D. Md. Dec. 2, 2019).  In *Doe*, the court declined to permit

5

discovery on issues involving piercing the corporate veil because "[i]n the absence of any allegations or indication that piercing the corporate veil would be necessary to prevent injustice, discovery into those factors is unnecessary and irrelevant." 2019 WL 6497962, at *6.

As stated above, there are no allegations to support a finding that piercing the corporate veil is appropriate or necessary. *See Mayes v. Moore*, 419 F. Supp. 2d 775, 780 (M.D.N.C. 2006) (explaining that "[t]he individual [or shareholder] is responsible for the Title VII violation not because he committed the violation but because he unfairly used the corporate form; thus, he should not receive the usually attendant 'limited liability' afforded to shareholders"). Plaintiff does not allege PRT is liable because PRT abused the corporate form; rather, Plaintiff alleges that PRT is liable because PRT directly committed the alleged discriminatory acts against Plaintiff. *See Mayes*, *supra*. Therefore, the court finds no basis to delay consideration of the Motion on grounds that discovery on issues involving the relationship among OPR, PRT, and Omitron is necessary. Accordingly, the court will exercise its discretion under Rule 12(d) and treat the Motion as one for summary judgment.

**Federal Rule of Civil Procedure 56**

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether

sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)). This court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

In undertaking this inquiry, the court considers the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014).

## **ANALYSIS**

As an initial matter, the court notes that while Plaintiff asserts numerous facts in her Opposition, Plaintiff does not provide support in the form of affidavits or declarations, stipulations, or other materials. *See* FED. R. CIV. PROC. 56(c)(1)(A). Rule 56(c)(1) requires that a party who is "asserting that a fact cannot be or is genuinely disputed must support this assertion." FED. R. CIV. PROC. 56(c)(1). The party must do so in either two ways:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits

> or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B). Absent an affidavit, Plaintiff fails to provide evidence the court may consider in resolving the Motion.

## I. Release of Federal Claims

Defendants argue they are entitled to summary judgment because the Agreement bars Plaintiff's claims. (ECF No. 21-2 at 5.) In response, Plaintiff contends the Agreement is invalid and unenforceable for various reasons.[3] (ECF No. 37-1 at 10.)

The ADEA, Title VII, and Section 1981 require that the execution of releases or waivers be "knowing and voluntary." *Cassiday v. Greenhorne & O'Mara, Inc.*, 220 F. Supp. 2d 488, 490-91 (D. Md. 2002); *see Torrez v. Public Service Co. of New Mexico, Inc.*, 908 F.2d 687, 689 (10th Cir. 1990) (explaining that "[b]oth Title VII and Section 1981 employment discrimination claims may be waived by agreement, but the waiver of such claims must be knowing and voluntary"). The Fourth Circuit applies different standards to evaluate the validity of a waiver as to claims under ADEA and Title VII.[4] *Cassiday*, 220 F. Supp. 2d at 490 n.2. "Under the ADEA a waiver of rights must meet specific enumerated criteria to be knowing and voluntary." *Id.* (citing 29

---

[3] First, Plaintiff argues that "the waiver document was written in a manner that was not understandable." (ECF No. 37-1 at 11.) Second, Plaintiff argues that "she had no input, there was no meeting of the mind[s], and she did not agree to it." *Id.* at 12. Third, Plaintiff contends that "Defendants ended their employment relationship with [her], for no 'lawful reason[]' [and] in violation of their own policy." *Id.* at 13. Fourth, Plaintiff maintains that she was unable to consult with an attorney before signing the Agreement. *Id.* at 15. Fifth, Plaintiff argues that she signed the Agreement under duress and undue pressure. *Id.* at 16. Lastly, Plaintiff argues that the Agreement contains false statements and misrepresentations regarding consideration. *Id.* at 17.

[4] In the Motion, Defendants evaluate the validity of the waiver under the same standard for both the ADEA and Title VII claims. Because the Fourth Circuit evaluates the validity of a waiver under different standards as to ADEA and Title VII claims, the court will analyze the ADEA and Title VII waiver questions separately. *Cassiday*, 220 F. Supp. 2d at 490 n.2.

U.S.C. § 626(f)(i)). In contrast, under Title VII and Section 1981, the court looks at "the totality of the circumstances in determining whether the waiver is knowing and voluntary." *Id.*; *see Torrez*, 908 F.2d at 690 (analyzing Title VII and section 1981 employment discrimination claims under the totality of the circumstances test); *Scoggins v. Honeywell Int'l., Inc.*, No.CIV.A. 2:11-3028-PMD, 2012 WL 6102031, at *2 (D.S.C. Dec. 10, 2012) (considering the totality of the circumstances test for the plaintiff's Title VII and Section 1981 claims).

    A.    **ADEA**

As discussed above, a waiver of rights under the ADEA must meet specific criteria to be valid. In *Cassiday v. Greenhorne & O'Mara, Inc.*, 220 F. Supp. 2d 488 (D. Md. 2002), the court explained the seven requirements:

> The Older Workers Benefit Protection Act of the ADEA, 29 U.S.C. § 626(f)(i) (OWBPA), provides that a waiver will be considered knowing and voluntary if it meets certain stringent requirements. Specifically, it requires that waiver must be written in a manner understandable by the employee, § 626(f)(i)(A); must refer to claims arising under the ADEA, § 626(f)(i)(B); must not abrogate claims that arise after the waiver's execution, § 626(f)(i)(C); must be supported by consideration, § 626(f)(i)(D); must advise the employee to consult with an attorney, § 626(f)(i)(E); must give the employee twenty-one days to consider the agreement, § 626(f)(i)(F); and must provide at least seven days after execution for the employee to revoke its terms, § 626(f)(i)(G). If a waiver given as part of a settlement agreement fails to satisfy these guidelines, it will be deemed invalid and the employer will remain subject to suit on the ADEA claims.

220 F. Supp. 2d at 491.

Here, as discussed in more detail below, the Agreement meets the criteria for a valid ADEA waiver:

> (1) the language is clear and understandable;
> (2) it expressly refers to Plaintiff's rights under the ADEA and various other laws;[5]

---

[5] The Agreement provides in relevant part:

9

> (3) indicates that it does not affect claims that may arise in the future;[6]
>
> (4) provides consideration in the form of four weeks of severance pay and continued insurance coverage until March 31, 2021;[7]

> That Campbell, on behalf of herself, her heirs, executors, assigns, and attorneys, hereby completely and irrevocably discharges and releases PRT and its affiliates and their respective officers . . . from any and all claims, demands, actions, causes of action, and/or liability of any kind whatsoever including, without limitation, any claim arising out of or in any way related, directly or indirectly, to Campbell employment with PRT, compensation therefor, or termination thereof, including, but not limited to, any claim for unpaid compensation, benefits, bonus compensation, or severance pay, wrongful discharge, discriminatory compensation practices, retaliation, breach of contract, intentional or negligent infliction of emotional distress, failure to provide a reasonable accommodation, and/or claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (race, color, religion, sex and national origin discrimination), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (age discrimination), the National Labor Relations Act, 29 U.S.C. § 141 *et seq.* (union and collective activity, whether directly against employer or a hybrid action against union and employer), the Equal Pay Act of 1963, 29 U.S.C. § 201 *et seq.* (equal pay), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (disability discrimination), the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (disability discrimination), the Civil Rights Act of 1866 and 1871, 29 U.S.C. § 1981 *et seq.* (civil rights), the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1001 *et seq.* (employee benefits) (except for any vested benefits under any tax qualified benefit plan), the Family and Medical Leave Act of 1993, 42 U.S.C. § 2601 *et seq.* (leaves of absence), the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* (citizenship and visa status), Title VIII of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A (securities fraud whistleblowing), Maryland Employment Discrimination Law, Maryland Government Article § 20-602, *et seq.*; a wrongful discharge action based upon an implied contract or public policy, and any claim of any kind based on any other federal, state or local statue, regulation, code, ordinance, public policy, as well as any common-law, tort, contract or other claim, and any state or local law of a similar nature to any of the foregoing, arising at any time prior to and including the effective date of this Agreement . . . .

(ECF No. 21-4 at 4.)

[6] The relevant clause provides: "That the parties hereby further acknowledge . . . (d) That Campbell waives all claims accrued as of the date of execution and that this Agreement does not affect any claims that may arise in the future[.]" (ECF No. 21-4 at 7.)

[7] The Agreement provides in relevant part:

> That PRT will provide Campbell with four (4) weeks of salary, equal to Seven Thousand, Five Hundred and Eight-Four Dollars and 00/100 ($7,584.00) as severance pay; in one payment which will be made on or before PRT's first regular occurring payday following seven (7) days after Campbell executes and delivers this Agreement to PRT, if Campbell does not revoke her acceptance of this Agreement.
>
> Campbell will continue to receive medical, dental, and vision coverage from PRT under PRT's group health and benefits plan through March 31, 2021.

>   (5) references consulting an attorney and the cover letter indicates that Plaintiff should consult with an attorney regarding the agreement;
>   (6) gives Plaintiff twenty-one days to consider; and
>   (7) gives Plaintiff seven days following execution to revoke its terms.

(ECF No. 21-4.)  The Agreement is clear and understandable; it is straightforward; and seven pages in length.  The Agreement expressly states that Plaintiff releases all claims, including her claims brought in this case. While Plaintiff maintains that the Agreement is invalid because she was unable to consult with an attorney, a waiver need only advise the employee that she should consult an attorney; it is up to the employer whether or not to seek counsel.  29 U.S.C. § 626(f)(1)(E).

Plaintiff also argues that that she did not receive adequate consideration because she was already entitled to severance pay pursuant to federal law, specifically 5 U.S.C. § 5595.  (ECF No. 37-1 at 17.)  The Federal Employee's Salary Act ("FESA") of 1965, 5 U.S.C. § 5595, applies to federal employees.  *Alexander v. U.S.*, 52 Fed. Cl. 710, 717 (Fed. Cir. 2002).  The statute defines "employee" as: "(A) an individual employed in or under an agency; and (B) an individual employed by a county committee established under section 590h(b) of title 16."  5 U.S.C. § 5595(2).  Plaintiff was not an employee at an agency within the definition of the statute.  Plaintiff was an employee at PRT and provides no basis for the court to conclude that PRT, as a private employer, is required to pay severance pay under FESA.

Additionally, Plaintiff argues that, because she worked on the date of her termination, she was entitled to two full weeks of pay.  Therefore, Plaintiff suggests that PRT's statements misrepresent the weeks of severance pay that Plaintiff received.  (ECF No. 37-1 at 18.)  Plaintiff cites no authority for this proposition.  As Defendants note, under the Fair Labor Standards Act,

---

(ECF No. 21-4 at 2-3.)

an "employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked." 29 C.F.R. § 541.118(a). However, "[f]ailure to pay the full salary in the initial or terminal week of employer is not considered inconsistent with the salary basis of payment." *Id.* § 541.118(c). Therefore, PRT was not required to pay Plaintiff for the full two weeks. PRT paid Plaintiff for her one day of work on January 11, 2021—the day Plaintiff was terminated. (ECF No. 37-7 at 2.) In addition, Plaintiff received 72 hours of severance pay in the paycheck issued on January 29, 2021. (ECF No. 37-7 at 2.) Finally, in the paycheck issued on February 12, 2021, Plaintiff received 88 hours of severance pay. *Id.* at 3. That notwithstanding, the result is the same whether PRT paid Plaintiff two or four weeks of severance. PRT's severance pay and two months of continuing insurance to which Plaintiff would not have received had she not signed the Agreement is adequate consideration.

Accordingly, while Plaintiff disputes the existence of various statutory requirements, Plaintiff fails to raise a genuine issue of material fact as to whether she knowingly and voluntarily executed the release. The court is satisfied that the Agreement meets the ADEA waiver requirements.

**B.** **Title VII and Section 1981**

Defendants argue that Plaintiff knowingly and voluntary released all Title VII and section 1981 claims. (ECF No. 21-2 at 8.) As discussed above, Title VII and section 1981 claims are analyzed under the "totality of the circumstances" standard. In *Cassiday*, the court explained the totality of the circumstances test:

> This standard has been held to comprehend (1) the employee's education and business experience; (2) the respective roles of the employer and employee in determining the terms and conditions of the waiver; (3) the clarity of the agreement; (4) the time the employee had to study the agreement; (5) whether the employee had the advice of counsel; (6) whether the employer encouraged the

> employee to seek the advice of counsel and whether the employee had sufficient time to do so; and (7) the waiver's consideration. This list of factors is non-exclusive and no single factor is a *sine qua non.*

220 F. Supp. 2d at 493 (internal citations omitted). "[T]he totality of circumstances test does not require that every element be met; rather, it only requires that after considering the totality of the circumstances, [p]laintiff's waiver can be characterized as knowing and voluntary." *Scoggins*, 2012 WL 6102031, at *2 (citing *Melanson v. Browning–Ferris Indus., Inc.*, 281 F.3d 272, 276 (1st Cir. 2002)). Here, similar to the ADEA claim, the totality of the circumstances indicate that Plaintiff knowingly and voluntarily waived her rights under Title VII and section 1981.

Addressing the seven factors, Plaintiff received a high school diploma and "was a qualified and competent IT professional with over 40 years of practical work experience. And she carried out her duties satisfactorily." (ECF No. 1 ¶¶ 11-12.) Second, PRT wrote the Agreement without Plaintiff's input. While Plaintiff argues that the waiver was not knowing and voluntarily because she had no input and did not agree to it, Plaintiff's input is not required. *See Randolph*, 2014 WL 4661985, at *5 (finding that the execution of the release was knowing and voluntary when the plaintiff "had no involvement in setting the terms of the Release"). Further, while Plaintiff did not negotiate or reject the terms and conditions of waiver, there is no evidence to support that she was unable to do so. Plaintiff also suggests that the waiver is invalid because PRT terminated her employment with no warning and for no lawful reason in violation of its policy. (ECF No. 37-1 at 13.) Plaintiff cites no authority for the proposition, and the court discerns no basis to find, that the Agreement is invalid because PRT may have violated its policy. Plaintiff was an at-will employee, was terminated, and signed the Agreement waiving all claims. (ECF Nos. 37-4; 21-4.)

Third, as discussed above, the Agreement is written in a clear manner and makes plain that Plaintiff waives all claims under the laws identified therein. The Agreement also makes clear that

Plaintiff had twenty-one days to consider it and seven days after execution to revoke it. The cover letter to the Agreement communicates that Plaintiff should consult with an attorney regarding the Agreement. (ECF No. 21-3 at 3.) Although Plaintiff maintains the waiver is invalid because she did not consult with an attorney, as explained above, this is not required. *See Randolph*, 2014 WL 4661985, at *5 (finding that the plaintiff's execution of the release was knowing and voluntary when the plaintiff did not have the advice of counsel). Further, Plaintiff concedes that PRT's HR Manager instructed her to consult with an attorney. (ECF No. 37-1 at 11.) The Agreement also states that Plaintiff "acknowledges that she has had sufficient time to consider this Agreement and to consult with counsel and others." (ECF No. 21-4 at 7.) Lastly, as discussed previously, the Agreement provides consideration. PRT paid Plaintiff severance pay and two months of continuing insurance, which Plaintiff would not have received had she not signed the Agreement. *See Randolph*, 2014 WL 4661985, at *5 (explaining that two weeks of pay was adequate consideration); *Alexander v. UIP Property Management, Inc.*, No. DKC-14-2469, 2016 WL 125605, at *5 (D. Md. Jan. 12, 2016) (finding that three weeks' pay was adequate consideration for the plaintiff's release of claims).

Accordingly, the totality of the circumstances indicate that Plaintiff signed the Agreement knowingly and voluntarily, and the Agreement bars Plaintiff's Title VII and section 1981 claims.

      C.    **<u>Duress</u>**

Although a waiver may meet the knowing and voluntary requirements, "it will not be deemed knowingly and voluntarily executed if the employee was under duress or otherwise intimidated into signing by the employer." *Cassiday*, 220 F. Supp. 2d at 492. Plaintiff argues that she signed the Agreement under duress and undue pressure. (ECF No. 37-1 at 16.)

In Maryland, duress is "a wrongful act which deprives an individual of the exercise of his free will." *Eckstein v. Eckstein*, 38 Md. App. 506, 512 (1978). Generally, duress is found in instances where "(1) one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that the circumstances were the result of the coercive acts of the opposite party." *Id.* at 514. However, "one's personal economic burdens resulting from the loss of a job" cannot form the basis of a duress claim and will not invalidate an otherwise valid release. *Cassiday*, 220 F. Supp. 2d at 492. "Otherwise, nearly every settlement ending an employment dispute would be voidable at the election of the employee." *Randolph*, 2014 WL 4661985, at *4. In *Randolph*, the court found that the plaintiff did not execute the release under duress when "she was called in on her day off, informed she was being terminated, presented with the [r]elease, and told that if she signed it she would receive severance pay, and if she did not sign it she would receive nothing . . . . [and] [s]he was told she had to sign it on the spot." *Id.*

Plaintiff does not allege that PRT threatened or misled her into signing the Agreement. At all times, she remained free to reject or negotiate the Agreement. Even assuming the truth of Plaintiff's account,[8] on the day of her termination she was presented with the Agreement, the HR manager instructed her to consult with an attorney, and to sign it within seven days if she wished to receive the benefits it provided. (ECF No. 37-1 at 16-17.) This does not constitute duress. *See Randolph*, 2014 WL 4661985, at *4 (finding that requiring the plaintiff to sign it on the spot does not constitute duress). Plaintiff's arguments focus solely on the financial and emotional distress of her termination—she repeats numerous times she was stressed, angry, overwhelmed, and distraught. Such actions do not form the basis for duress.[9] *See Cassiday, supra.*

---

[8] As discussed above, while Plaintiff asserts these facts in her Opposition, Plaintiff did not provide support in the form of affidavits or declarations, stipulations, or other materials. *See* FED. R. CIV. PROC. 56(c)(1)(A).

[9] Even if the circumstances suggested that execution of the Agreement was involuntary, Plaintiff had seven days to revoke the Agreement, and did not do so; therefore, her execution of the Agreement is deemed voluntary. *Salami v.*

Accordingly, there is no basis to conclude that Plaintiff signed the Agreement under duress and Plaintiff is bound by the Agreement's terms. The Motion will be granted as to Counts I though VIII.

## II.     Release of State Law Claim

While Defendants maintain that the totality of the circumstances also bar Plaintiff's FEPA claim, Defendants do not cite, and the court is not aware of, any authority analyzing release of FEPA claims under the totality of the circumstances test. Courts generally analyze a release or waiver of state law claims separately from federal claims. *See Smith v. Amedisys Inc.*, 298 F.3d 434, 444 (5th Cir. 2002) (analyzing state employment discrimination claim separate from Title VII claim); *United States v. New York City Dep't of Educ.*, 407 F. Supp. 3d 365, 418 (S.D.N.Y. 2018) (analyzing release of federal claims and state claims separately); *Reid v. IBM Corp.*, No. 95 Civ. 1755, 1997 WL 357969, at *17 (S.D.N.Y. June 26, 1997) (analyzing state law claim separately after finding that the release met the OWBPA and the totality of the circumstances test).

In Maryland, releases are "construed and applied according to the rules of contract law." *Owens-Illinois, Inc. v. Cook*, 386 Md. 468, 495 (2005). "The interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law." *Clancy v. King*, 405 Md. 541, 556-57 (2008). "Maryland follows the objective law of contract interpretation, which 'giv[es] effect to the clear terms of agreements, regardless of the intent of the parties at the time of contract formation.'" *Impac Mortg. Holdings, Inc. v. Timm*, 245 Md. App. 84, 109 (2020) (quoting

---

*Jubilee Ass'n of Md.*, No. TDC-20-3532, 2021 WL 2784632, at *6 (D. Md. July 2, 2021); *see Young v. Anne Arundel County*, 146 Md. App. 526, 597 (2002) ("A contract which may be avoided on the basis of duress may be ratified after the duress has been removed. The injured party must act to repudiate the agreement promptly or within a reasonable time after the removal of the duress, otherwise he may be deemed to have ratified the contract because of his silence and failure to act.").

*Precision Small Engines, Inc. v. College Park*, 457 Md. 573, 585 (2018)) (citations omitted). The Supreme Court of Maryland explains the objective interpretation of contracts as follows:

> A court construing an agreement under this test must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean. As a result, when the contractual language is clear and unambiguous, and in the absence of fraud, duress, or mistake, parol evidence is not admissible to show the intention of the parties or to vary, alter, or contradict the terms of that contract.

*Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261 (1985) (internal citations omitted).

The plain language of the Agreement provides in relevant part:

> That Campbell, on behalf of herself, her heirs, executors, assigns, and attorneys, hereby completely and irrevocably discharges and releases PRT and its affiliates and their respective officers . . . from any and all claims, demands, actions, causes of action, and/or liability of any kind whatsoever including, without limitation, any claim arising out of or in any way related, directly or indirectly, to Campbell employment with PRT, compensation therefor, or termination thereof, including, but not limited to, any claim for unpaid compensation, benefits, bonus compensation, or severance pay, wrongful discharge, discriminatory compensation practices, retaliation, breach of contract, intentional or negligent infliction of emotional distress, failure to provide a reasonable accommodation, and/or claims pursuant to . . . Maryland Employment Discrimination Law, Maryland Government Article § 20-602, *et seq.*; a wrongful discharge action based upon an implied contract or public policy, and any claim of any kind based on any other federal, state or local statue, regulation, code, ordinance, public policy, as well as any common-law, tort, contract or other claim, and any state or local law of a similar nature to any of the foregoing, arising at any time prior to and including the effective date of this Agreement . . .

(ECF No. 21-4 at 4.)  The Agreement makes clear that it covers Plaintiff's claims under the Maryland Employment Discrimination statute, MD. CODE ANN. STATE GOV'T §§ 20-601, *et seq*. Accordingly, Plaintiff's FEPA claim is barred by the Agreement and the Motion will be granted as to Count IV.

### III. Release of Claims as to OPR

Defendants argue that the Agreement also applies to OPR because OPR falls within the definition of an affiliate.  (ECF No. 21-2 at 11.)  Plaintiff does not dispute that OPR is an affiliate of PRT; instead Plaintiff argues that PRT and OPR are "alter egos."  (ECF No. 37-1 at 18.)

The Agreement provides, in relevant part:

> This Confidential Separation Agreement, Waiver and Release ("Agreement") is entered into this 11th day of January 2021, by and between Geraldine Campbell ("Campbell"), on the one hand, and Pearl River Technologies ("PRT") LLC, a Mississippi Limited Liability Company, as well as any parent and subsidiary companies, affiliates, holding companies, successors, and assigns on the other hand.

(ECF No. 21-4.)  This court relies on Black's Law Dictionary in defining the term "affiliate." *Structural Preservation Systems, LLC v. Andrews*, 931 F. Supp. 2d 667, 672 (D. Md. 2013). Black's Law Dictionary defines "affiliate" to include "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation."  *Affiliate*, BLACK'S LAW DICTIONARY (10th ed. 2014).  It is undisputed that PRT is the majority owner of OPR, LLC.  (ECF No. 23.)  Therefore, OPR falls within the definition of an "affiliate."  Accordingly, the Agreement bars Plaintiff's claims against OPR and the court declines to address Defendants' remaining arguments.

**CONCLUSION**

For the reasons set forth herein, Defendants PRT and OPR's Motion to Dismiss or, in the Alternative, Summary Judgment (ECF No. 21), construed as a Motion for Summary Judgment, will be granted.

A separate order follows.

/S/
Julie R. Rubin
United States District Judge

July 13, 2023